UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | No. 1:04-CV-10657-DPW |
| THE BLACK & DECKER CORPORATION, | ) | (Bostik Middleton Site) |
| BLACK & DECKER, INC., BLACK & DECKER | ) | |
| (U.S.) INC., EMHART CORPORATION, and | ) | No. 1:04-CV-10684-DPW |
| EMHART, INC., | ) | (Whitman Site) |
| Defendants. | ) | |

**LIBERTY MUTUAL INSURANCE COMPANY'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION TO ESTABLISH AMOUNT
OF REIMBURSABLE DEFENSE COSTS WITH RESPECT TO
WHITMAN AND BOSTIK MIDDLETON SITES**

Pursuant to Federal Rules of Civil Procedure 50(b), 59(e), and 60(b), plaintiff,

Liberty Mutual Insurance Company ("Liberty Mutual"), respectfully submits this

memorandum of law in support of its Motion to Establish the Amount of

Reimbursable Defense Costs with respect to the Whitman and Bostik Middleton

Sites.

As set forth more fully below, defendants, The Black & Decker Corporation,

et al. ("Black & Decker"), seek reimbursement for attorneys' fees and disbursements

expended in connection with the investigation and clean-up of alleged pollution

damages at the Whitman and Bostik Middleton Sites (the "underlying actions"),

based on Liberty Mutual's alleged duty to defend Black & Decker with respect to

the underlying actions.  Liberty Mutual respectfully submits that the majority of

the costs for which Black & Decker seeks reimbursement are not subject to payment under the policies issued by Liberty Mutual to Black & Decker's predecessor in interest, USM Corporation.  Virtually all of the alleged defense costs at the Whitman site were incurred prior to Black & Decker's providing notice of the claim to Liberty Mutual, and therefore are not subject to reimbursement (as the Court previously ruled with respect to pre-notice defense costs at the Bostik Middleton site).  Moreover, the invoices for post-notice attorneys' fees and disbursements which Black & Decker has submitted for reimbursement contain numerous cost items which are not reasonable or necessary for the defense of the underlying actions.  Since Liberty Mutual's alleged duty to defend pertains only to reasonable defense costs, Black & Decker is not entitled to recoup payment for these unreasonable and unnecessary charges from Liberty Mutual with respect to the underlying actions.  Finally, to the extent that Black & Decker is entitled to reimbursement for reasonable charges set forth on particular invoices, the appropriateness and amount of any pre-judgment interest associated with the reimbursable portion of those invoices must be determined after Black & Decker identifies the date, if any, on which it presented each such already-paid invoice to Liberty Mutual for reimbursement after having notified Liberty Mutual of the existence of the underlying claim, and Liberty Mutual declined to make such payment.

## Background of the Motion

In the December 5, 2003 Memorandum and Order Regarding Summary Judgment, as clarified by Order dated January 16, 2004, the Court found that

Liberty Mutual had a duty to defend Black & Decker with respect to the Bostik
Middleton site, but only with respect to those defense costs attributable to DEP's
remediation orders and incurred after November 3, 1994 (the date on which Black
& Decker notified Liberty Mutual of the claim). See December 5, 2003 Order at
113-114 and January 16, 2004 Order at 11-12. The Court also found that Liberty
Mutual had a duty to defend Black & Decker with respect to the pollution damage
at the Whitman site which took place during the period May 18, 1956 to January 1,
1969. See December 5, 2003 Order at 128; January 16, 2004 Order at 12. The
Court did not address the issue of whether, as it had found at the Bostik Middleton
site, Liberty Mutual's duty to defend should be deemed to commence only upon
Black & Decker's provision of notice of the Whitman claim on November 3, 1994.

Following the trial with respect to the Whitman and Bostik Middleton sites,
Black & Decker presented final versions of schedules identifying the defense cost
invoices as to which it seeks reimbursement. See Whitman and Bostik Middleton
defense cost invoice schedules, attached hereto as Exhibits 1 and 2, respectively.
The fifty-eight Whitman invoices range from July, 1989 to October, 1995, and all
but four of them are dated prior to the November 3, 1994 date on which Black &
Decker notified Liberty Mutual of the Whitman and Bostik claims. The twenty-
eight Bostik invoices presented for reimbursement pertain only to charges incurred
after November 3, 1994.

On the schedules of invoices attached hereto as Exhibits 1 and 2, Black &
Decker included a column setting forth the amount of interest which was allegedly

due on each invoice as of April 30, 2004.  Black & Decker noted that the interest was calculated at the rate of twelve percent, beginning thirty days after the date of the invoice.  As discussed <u>infra</u>, Liberty Mutual contends that any pre-judgment interest which is arguably assessable with respect to the reimbursable portion of invoices rendered after the date of notice of the claim to Liberty Mutual should be calculated with reference to the date on which each such invoice was presented to Liberty Mutual for payment, and Liberty Mutual declined, after a reasonable review period, to pay the invoice.  Black & Decker has not provided any proof of the of the dates on which it paid the invoices itself, or the dates on which the invoices were presented to Liberty Mutual for payment and Liberty Mutual declined to pay.

<b><u>Argument</u></b>

**I.    LIBERTY MUTUAL IS NOT OBLIGATED TO REIMBURSE DEFENSE COSTS INCURRED AT THE WHITMAN SITE <u>PRIOR TO NOVEMBER 3, 1994.</u>**

As it did with the Bostik Middleton site, this Court should determine that Black & Decker is not entitled to reimbursement of defense costs at the Whitman site which were incurred prior to November 3, 1994, the date on which Black & Decker gave notice of the Whitman and Bostik Middleton claims to Liberty Mutual. It is well-established that "[n]o duty to defend or to participate in a defense can arise before the insurer has notice of the suit against the insured, or at least of the underlying claim and the likelihood of suit."  <u>Hoppy's Oil Service, Inc. v. Ins. Co. of America</u>, 783 F. Supp. 1505, 1509 (D. Mass. 1992) (Keeton, J.).  <u>See</u> <u>also</u> <u>American Mutual Ins. Co. v. Beatrice Companies, Inc.</u>, 924 F. Supp. 861, 872 (N.D. Ill. 1996) (construing Massachusetts law) ("As a general rule, an insurer has no duty to

defend until it receives notice of a claim.") (citing <u>Hoppy's Oil</u> and 7C  J. Appleman,

*Insurance Law and Practice* §§4682, 4691 (Berdal ed. 1979)).  Since the duty to

defend does not arise prior to the insurer's receipt of notice of the underlying claim,

the insurer cannot be liable for payment of defense costs incurred by the

policyholder prior to the date on which it provides notice of the claim to the insurer.

<u>See Hoppy's Oil</u>, 783 F. Supp. at 1509 ("no duty to provide defense costs could have

arisen until at least that time" when policyholder provided notice of underlying

claim); <u>American Mutual</u>, 924 F.Supp. at 874 ("insurers are not liable for pre-notice

defense costs.")).   <u>See also Managed Health Care Sys., Inc. v. St. Paul Fire &</u>

<u>Marine Ins. Co.</u>, No. 98-CIV-10831, 2001 U.S. Dist. LEXIS 18302, at *5-6 (D. Mass.

Sept. 28, 2001) (O'Toole, J.) (policyholder "must bear the defense costs [it] incurred

prior to giving [the insurer] notice" of the underlying claim).  <u>See generally Erie Ins.</u>

<u>Exchange v. Virgin Island Enterprises, Inc.</u>, 264 F. Supp. 2d 261, 265 (D. Virgin

Islands 2003) (citing cases holding that insurer is not liable for pre-notice defense

costs incurred by policyholder in underlying action).

    In the instant case, it is undisputed that Black & Decker did not give notice

of the Whitman claim to Liberty Mutual until November 3, 1994, five years after it

began to incur defense costs in connection with the alleged pollution conditions at

the site.  Liberty Mutual therefore had no duty to defend prior to November 3, 1994,

and cannot be liable for payment of any defense costs that were incurred prior to

that date.  <u>See Hoppy's Oil</u>, 783 F. Supp. at 1509.  Accordingly, Liberty Mutual has

no duty to reimburse Black & Decker for any invoice rendered with respect to defense costs incurred at the Whitman site prior to November 3, 1994.[1]

## II. LIBERTY MUTUAL IS NOT OBLIGATED TO REIMBURSE THE FULL AMOUNT OF THE ALLEGED DEFENSE COSTS INVOICES SUBMITTED BY BLACK & DECKER.

Long before it gave notice of the Whitman and Bostik Middleton claims to Liberty Mutual, Black & Decker retained its own counsel at the law firm Swidler & Berlin Chartered from Washington, D.C. (and, in one instance, Miles & Stockbridge from Baltimore, Maryland) to defend against the underlying claims relating to the Whitman and Bostik Middleton sites.  To the extent that the Court has found that Liberty Mutual has a duty to defend Black & Decker with respect to those sites, Liberty Mutual is obligated to reimburse only those fees for legal services and disbursements charged by those law firms which are reasonable in amount and were necessarily incurred in order to defend the underlying claims.  See Liberty Mutual Insurance Company v. Continental Casualty Company, 771 F.2d 579, 582 (1st Cir. 1985)("only reasonable fees may be recovered") (citing Magoun v. Liberty Mutual Insurance Company , 346 Mass. 677, 684, 195 N.E.2d 514, 519 (1964)("insurer required to pay the 'reasonable charges' of counsel hired by insured")); 7C J. Appelman, Insurance Law and Practice §4691, at 261 (1979)("[A]ttorneys' fees incurred by the insured in the defense of an action must be shown to be reasonable to allow a recovery thereof from the insurer.")).  See also

---

[1] Only four invoices submitted by Black & Decker are eligible for reimbursement as post-notice defense costs at the Whitman site: the Swidler & Berlin invoices dated December 22, 1994, May 16, 1995, and August 15, 1995, and the Miles & Stockbridge invoice dated October 24, 1995.  The total amount of these invoices is $792.44, prior to the addition of any prejudgment interest which might be appropriate.

Rubenstein v. Royal Ins. Co. of America, 44 Mass. App. Ct. 842, 849-50, 694 N.E.2d 381, 386 (1998)(only reasonable attorneys' fees incurred in defense of underlying claim need be reimbursed).

Black & Decker bears the burden of demonstrating that the defense costs for which it is seeking reimbursement were reasonable. See Liberty Mutual , 771 F.2d at 582 ("the party claiming such expenditures has the burden of proving them, including the burden of proving whether the fees were in fact reasonable.").  Black & Decker cannot meet its burden for recovering a substantial portion of the defense costs with respect to the Whitman and Bostik Middleton sites, however, because the invoices for which Black & Decker seeks reimbursement contain entries which either describe excessive or duplicative services and disbursements, or provide no foundation for determining the reasonableness of the charges.  Liberty Mutual cannot be obligated to reimburse Black & Decker for charges which are either demonstrably unreasonable, or for which there is no basis for determining reasonableness.

## A.    Only Reasonable Attorneys' Fees and Disbursements Are Eligible For Reimbursement.

This Court has "wide discretion" in determining whether the attorneys' fees and disbursements charged in defense of the underlying Whitman and Bostik Middleton claims were reasonable.  See Rubenstein, 44 Mass. App. Ct. at 387 (trial judge had "wide discretion" to determine whether certain defense costs were eligible for reimbursement).  See also Chicago Ins. Co. v. Lappin, 58 Mass. App. Ct. 769, 783, 792 N.E.2d 1018, 1029 (2003) (an award of defense costs "rests in sound

judicial discretion.").   In order for the court to be able to make that determination, the policyholder seeking reimbursement must provide the court with documents "sufficient to provide . . . a proper decisional foundation."

Where, as in the instant case, descriptions of legal services provided and disbursements incurred do not provide sufficient detail to permit the court to assess whether the services and disbursements were "commensurate with and properly allocated to the work performed," the charges are not eligible for reimbursement. Id.  See generally InvesSys, Inc. v. The McGraw-Hill Companies, Inc., 2003 U.S. Dist. LEXIS 12480 at *9 (D. Mass. May 27, 2003) (O'Toole, J.) (deducting fees awardable under copyright statute where "[w]hat is included in this category [(of services)] is not explained by the defendants; "[i]n the absence of justification, I disallow it in its entirety."); Domestic Loan & Investment Bank v. Ernst, 1999 Mass. Super. LEXIS 568 (Norfolk Sup. Ct. July 28, 1999) at *8 (Burnes, J.) (where party seeking reimbursement of defense costs under M.G.L. c.21E, §4 "fail[ed] to sufficiently explain to the court how he arrived at such figures, the court also deducts the costs for photocopying, delivery services, transportation, postage, computerized legal research, and professional service.").

Moreover, when invoices reflect that a large number of lawyers have been assigned to defend the underlying case, courts have not hesitated to reduce the fees submitted for reimbursement, especially since heavy staffing can result in excessive charges for intra-office conferences and photocopies used to keep all members of the large defense group informed.  See, e.g., InvesSys, 2230 U.S. Dist. LEXIS 12480 at

**9-11 (adjusting number of hours billed and total number of photocopies to account for heavy staffing of case; "the issue . . . is the proportionality of that effort to the task at hand . . . [i]t is likely that a significant portion of [the photocopying] expense can be attributed to the fact that there were multiple participants on the defense team. Keeping everyone in the loop undoubtedly inflates the reproduction rate."). See also In re: Mortgage Investors Corporation, 136 B. R. 592, 597 (Bankr. D. Mass. 1992) (reducing attorneys' fee award where law firm "appeared to have assigned excessive numbers of staff members to the matter, the most significant product of which was a vastly increased amount of internal conferencing between the players.").

Courts have also refused to order reimbursement of charges reflecting the attendance of more than one lawyer at a deposition or hearing. See, e.g., Rubenstein, 44 Mass. App. Ct. at 387 (upholding trial judge's refusal "to award fees where more than one lawyer from any one firm attended a meeting or a deposition."). In addition, courts have examined whether legal work was performed by an appropriate timekeeper with the lowest billing rate in deciding whether fees are reasonable. See, e.g., Domestic Loan, 1999 Mass. Super. LEXIS 568 at **4-5 ("In further determining the reasonableness of the amount of attorneys' fees requested, the court must inquire into whether the work by the highest billing attorney . . . required use of that attorney's experience level, or whether work could have been done by [a] less experienced, lower billing attorney or paralegal.") (citing

Lipsett v. Blanco, 975 F.2d 934, 940 (1st Cir. 1992) ("clerical or secretarial tasks ought not to be billed at lawyer's rates, even if a lawyer performs them.")).

Under the foregoing principles, many of the legal services and disbursements charged by Black & Decker's law firms were either excessive or insufficiently explained, and should not be eligible for reimbursement. Therefore, Liberty Mutual should not be obligated to pay the entire amount of the post-tender invoices submitted by Black & Decker, and should only have to pay for those defense costs which can be ascertained to have been reasonable and necessary.

**B.    The Amount of Black & Decker's Defense Cost Invoices Should Be Reduced By Eliminating Unreasonable Charges.**

Liberty Mutual retained an expert, Charity Dobbins Connor, Esq., to perform a detailed categorical review of the invoices Black & Decker submitted for reimbursement, in order to formulate recommendations concerning reductions for unreasonable charges. Utilizing reasoning consistent with the cases discussed above, Ms. Connor has concluded that certain categories of costs on the law firm invoices submitted by Black & Decker for reimbursement are unreasonable, either because the charges are excessive or duplicative, or because the invoices provide no foundation for a reasonableness determination. See excerpts from expert reports of Charity Dobbins Connor from 1998, March 28, 2003 and April 3, 2003 (copies annexed hereto as Exhibits 3, 4, and 5, respectively).[2]  Based on Ms. Connor's

---

[2] Ms. Connor's analysis focused on the invoices from Swidler & Berlin with respect to the Whitman and Bostik Middleton sites, and did not take into consideration the one invoice from Miles & Stockbridge for the Whitman site.  Ms. Connor's analysis takes into account the numerous Whitman invoices rendered prior to the November 3, 1994 notice date to Liberty Mutual, and the reduction recommendations discussed herein relate to all of those invoices, although Liberty Mutual takes the position, as discussed supra, that no invoices for services rendered prior to November 3, 1994 should

expert opinion, Liberty Mutual respectfully submits that the categories of defense

costs discussed below are not reasonable, and therefore should be either reduced or

disallowed completely in determining the amount for which Liberty Mutual owes

reimbursement to Black & Decker.[3]

### 1. Vague Descriptions of Services

Black & Decker cannot prove that a substantial portion of the legal services

and disbursements for which it seeks reimbursement are reasonable, because the

description of the activities performed is so vague that it is impossible to determine

what work was actually performed.  Consequently, it is not possible to assess

whether the tasks performed were inappropriate, or whether there was duplication

or overlap of effort.  See Exhibit 4 at p. 8.  For example, several entries are phrased

as "review documents", "follow-up work re: meeting with Bostik", and "telephone

call to Linda Biagioni."  See compilation of Whitman invoice entries recommended

by Ms. Connor for reductions due to vague descriptions ("Whitman Vague

---

be subject to reimbursement.  Ms. Connor did not, however, analyze six of the invoices relating to the
Whitman site and five of the invoices relating to the Bostik Middleton site, because copies were not
available to her at the time she prepared her expert reports.  Accordingly, the reductions
recommended by Ms. Connor are conservative in amount, because they do not take into account any
entries on these eleven invoices which might also have fallen into the categories which should be
reduced or eliminated.

[3] In her expert reports, Ms. Connor created compilations setting forth the invoice entries that should
be deducted or reduced because the charges were either unreasonable or not sufficiently documented
to permit an assessment of reasonableness.  Those invoice entry compilations for the Whitman and
Bostik Middleton invoices reviewed by Ms. Connor are annexed hereto as Exhibits 6 through 45, and
are referred to herein by site name and category name (e.g., "Whitman Vague Descriptions Invoice
Entries", "Bostik Questionable Interoffice Conferences Invoice Entries").  For ease of reference,
Liberty Mutual has also prepared spreadsheets setting forth all of the categories of recommended
deductions, and the dollar value of such recommended deductions.  These spreadsheets, which are
broken out by site and by type of cost (either legal services or disbursements), are annexed hereto as
Exhibits 46 to 48 (Whitman Legal Services, Disbursements, and Summary of Legal Services and
Disbursements, respectively) and 49 to 51 (Bostik Legal Services, Disbursements, and Summary of
Legal Services and Disbursements, respectively).

Descriptions Invoice Entries"), annexed hereto as Exhibit 6; Bostik Vague

Descriptions Invoice Entries, annexed hereto as Exhibit 7.  Such a lack of

specificity in the invoice entries is insufficient to permit a determination of whether

the activity was necessary for defense of the underlying claim, and whether the fees

charged are commensurate with the services performed.  See generally Chicago Ins.

Co., 58 Mass. App. Ct. at 783 (fees are reasonable only when commensurate with

services performed).  Black & Decker therefore cannot meet its burden of proving

that such fees were reasonable, because the invoices provide no "decisional

foundation" for such a determination.  Accordingly, the fees associated with these

vague invoice entries should be deducted in their entirety from the Whitman and

Bostik Middleton invoices, in the amount of $21,139.25 and $2,073.50, respectively.

See generally InvesSys, 2003 U. S. Dist. LEXIS at *9 ("What is included in this

category is not explained by the defendants.  In the absence of justification, I

disallow it in its entirety.").

### 2.    Intra-Office Conferences/Questionable Intra-Office Conferences

Black & Decker's claim for reimbursement for intra-office conferences among

its defense counsel reflects excessive staffing on the underlying cases, and should be

denied as unreasonable.  A large number of Swidler & Berlin partners and

associates were assigned to the Whitman and Bostik Middleton matters, and Black

& Decker seeks recovery for several time entries such as "office conference with B.

Malter re status."  See Whitman Inter-Office Conferences Invoice Entries, annexed

hereto as Exhibit 8; Bostik Inter-Office Conferences Invoice Entries, annexed hereto

as Exhibit 9.  Such intra-office status conferences are a byproduct of excessive

staffing, which frequently results in the need for numerous team meetings to keep

the lawyers informed of the status of the case, to distribute assignments, and

provide training for less-experienced personnel.  See Exhibit 5 at p.12.  See also In

re: Mortgage Investors Corporation, 136 B.R. at 597 (reducing fees where law firm

"appeared to have assigned excessive numbers of staff members to the matter, the

most significant product of which was a vastly increased amount of internal

conferencing between the players.").  Holding numerous meetings to keep a large

staff apprised of the case status should be considered an administrative cost of

running the business of a law firm, since such meetings are aimed at ensuring

quality control, rather than at addressing the substantive issues in the case.  See

Exhibit 5 at pp. 12-13.  Charging fees for time spent on such administrative

functions is not reasonable.

Furthermore, the reimbursable nature of a number of the inter-office

conferences reported on the Swidler & Berlin invoices is questionable, because the

descriptions in the invoice entries are vague.  For example, Black & Decker seeks

reimbursement for a "meeting with E. Woolworth re: assignments" and "conference

with B. Taylor re: status."  See Whitman Questionable Inter-Office Conference

Invoice Entries, annexed hereto as Exhibit 10; Bostik Questionable Inter-Office

Conference Invoice Entries, annexed hereto as Exhibit 11.  As set forth above, such

entries do not provide a "decisional foundation" for a determination of their

reasonableness.  Accordingly, the reimbursement sought by Black & Decker should

be reduced by $3,517.25 for the Whitman site and $11,232.50 for the Bostik

Middleton site.[4]

### 3.    **Questionable/Exceptional Charges and Practices**

Black & Decker cannot prove that a number of time entries for matters that

do not appear to be related to defense of the underlying cases are reasonable in

scope and amount.  For example, Black & Decker seeks reimbursement for "office

conference re: insurance information on Bostik", "review[ing] materials prepared by

H&A: begin[ing] letter to Client re: H&A's performance" and "draft[ing a] memo for

possible use in insurance coverage litigation."  See Whitman

Questionable/Exceptional Charges and Practices Invoice Entries, annexed hereto as

Exhibit 12; Bostik Questionable/Exceptional Charges and Practices Invoice Entries,

annexed hereto as Exhibit 13.   These entries suggest that the services were only

marginally related, at best, to defense of the Whitman and Bostik claims.  Thus, the

expenses should be considered unreasonable and should be deducted from the

invoices.  Accordingly, the fees associated with these invoice entries from the

Whitman and Bostik Middleton invoices should be reduced by in the amount of

$435.00 and $145.00, respectively.

### 4.    **Duplicate Attendance**

Numerous Swidler & Berlin invoices contain entries reflecting the attendance

of more than one lawyer at meetings and depositions concerning the Bostik

---

[4] The reduction in costs related to the Bostik Site is based on a $9,740.25 reduction for intra-office conferences and a $1,492.25 reduction for the questionable intra-office conferences.  See Exhibits 9 and 11.  Similarly, the reduction in costs related to the Whitman Site is based on a $3,404.75 reduction for intra-office conferences and a $112.50 reduction for questionable intra-office conferences.  See Exhibits 8 and 10.

Middleton site.  <u>See</u>, <u>e.g.</u>, Bostik Duplicate Attendance Invoice Entries, annexed

hereto as Exhibit 14  (several entries showing more than one person "attending

meeting with Bostik in Middleton, MA.").  As discussed above, courts have

recognized that such duplicative attendance at depositions and meetings is

unreasonable.  <u>See</u>, <u>e.g.</u>, <u>Rubenstein</u>, 44 Mass. App. Ct. at 387 (upholding trial

judge's refusal "to award fees where more than one lawyer from any one firm

attended a meeting or a deposition.").  The Swidler & Berlin invoices should

therefore be reduced by $1,240.00 for the Bostik Middleton site in order to eliminate

unreasonable charges for duplicative attendance.

### 5.  Legal Research

Black & Decker cannot prove that the fees charged by Swidler & Berlin for

legal research are both reasonable in amount and commensurate with the services

provided.  Outside counsel are expected to possess a certain level of expertise

regarding the matters for which they are retained by the policyholder.    While some

legal research may be necessary, excessive time spent on researching elementary

concepts that should otherwise be common knowledge or are only tangentially

related to the underlying case, as well as charges for routine research conducted by

attorneys with the highest billing rates on the team, should be considered

unreasonable.  <u>See</u> Exhibit 4 at  pp. 13-14.  <u>See</u> <u>generally</u> <u>Domestic Loan</u>, 1999

Mass. Super. LEXIS at 568, **5 – 7.

Many of the legal research entries on the Swidler & Berlin invoices are

described in a vague manner, and provide no grounds for a determination of

reasonableness.  For example, Black & Decker seeks reimbursement for research on

the definition of "liability" under Delaware law, and "study of law re: reasons for delays in remediation project." See Whitman Legal Research Invoice Entries, annexed hereto as Exhibit 15; Bostik Legal Research Invoice Entries, annexed hereto as Exhibit 16. There is no way to determine whether the fees claimed are commensurate with the services performed, because it is not possible to determine the purpose for which such research was done, and whether it relates to defense of the claims concerning the Whitman and Bostik Middleton sites. Moreover, two of the Bostik invoices for which Black & Decker is seeking reimbursement contain entries for research relating to Michigan law, which presumably relates to Bostik's plant located in Marshall, Michigan, rather than to the Middleton facility. Black & Decker has failed to prove that the research performed was not elementary, was for a specified purpose to advance the defense of the Whitman and Bostik Middleton cases, and was performed by persons whose skill level is commensurate with the work performed. See generally Domestic Loan, 1999 Mass. Super. LEXIS at 568, **4-5. Accordingly, the Whitman and Bostik Middleton invoices should be reduced by $2,855.00 and $4,995.00, respectively, to eliminate the unreasonable charges for legal research.

### 6.    Attorneys Performing Secretarial/Clerical Functions, Questionable Secretarial/Clerical Functions

Black & Decker's attorneys have charged for performing secretarial/clerical functions such as making travel arrangements, marking documents, and scheduling teleconferences. See Whitman Secretarial/Clerical Invoice Entries, annexed hereto as Exhibit 17; Bostik Secretarial/Clerical Invoice Entries, annexed hereto as Exhibit

18.  As discussed above, such administrative services should be factored into the firm's overhead and reflected in the attorneys' billing rates, rather than being the subject of separate charges by those attorneys.  <u>See</u> Exhibit 5 at p. 13 (administrative costs should be incorporated into the hourly rates that the firm charges).  <u>See</u> <u>also</u> <u>Domestic Loan</u>, 1999 Mass. Super. LEXIS 568 at *5 (citing <u>Lipsett v. Blanco</u>, 975 F.2d at 940 ("clerical or secretarial tasks ought not to be billed at lawyers' rates, even if a lawyer performs them.")).  It is unreasonable for Black & Decker to seek reimbursement for such services.

Moreover, several invoice entries for apparently secretarial functions performed by Black & Decker attorneys are questionable, because the descriptions in the entries are vague.  For example, Black & Decker seeks reimbursement for "review file for invoices on Oberursel", "drafting letter to B. Cattaneo", and "drafting cover letter to Linda B. to go with payment letter to Bostik."  <u>See</u> Whitman Questionable Secretarial/Clerical Invoice Entries, annexed hereto as Exhibit 19; Bostik Questionable Secretarial/Clerical Invoice Entries, annexed hereto as  Exhibit 20.  Given the vague language of the entries, it is difficult to determine whether the services described were secretarial in nature, or could only be performed by an attorney.  Black & Decker therefore cannot meet its burden of proving that such fees were reasonable, because the invoices refer to administrative functions and provide no "decisional foundation" for such a determination.  Accordingly, the

reimbursement sought by Black & Decker should be reduced by $1,219.50 for the Whitman site and $408.25 for the Bostik Middleton site.[5]

### 7.    **Attorneys Performing Paralegal Functions**

At the Bostik site, two invoices contained entries reflecting performance by attorneys of functions that should have been performed by paralegals.  Black & Decker seeks reimbursement for "finding document regarding designation of site under applicable environmental law" and "completing index for same [correspondence between Bostik and Black & Decker]".  <u>See</u> Bostik Attorneys Performing Paralegal Functions Invoice Entries, annexed hereto as Exhibit 21. These charges for paralegal-level services are not reasonable, because they are billed at attorneys' higher rates.  <u>See</u> <u>generally</u> <u>Domestic Loan</u>, 1999 Mass. Super. LEXIS 568 at **4-5 ("In further determining the reasonableness of the amount of attorneys fees requested, the court must inquire into whether the work by the highest billing attorney . . . required use of that attorney's experience level, or whether work could have been done by [a] less- experienced, lower-billing attorney or paralegal.").  Accordingly, the Bostik invoices should therefore be reduced by $353.75.

### 8.    **Photocopy Charges**

Black & Decker cannot prove that the photocopying costs on the Swidler & Berlin invoices are reasonable, and therefore reimbursable.  The invoices do not

---

[5] The reduction in costs related to the Bostik Site is based on a $150.75 reduction for secretarial/clerical functions and a $257.50 reduction for questionable secretarial/clerical functions.  <u>See</u> Bostik Defense Cost Invoice Schedules, attached hereto as Exhibits 18 and 20.  Similarly, the reduction in costs related to the Whitman Site is based on a $739.25 reduction for secretarial/clerical functions and a $480.25 reduction for questionable secretarial/clerical functions.  <u>See</u> Exhibits 17 and 19.

disclose the number of copies made, nor the cost per page of the documents being photocopied. Instead, Swidler & Berlin charges for copies on a daily basis, and does not provide any breakdown regarding the quantity of copies nor the price of each individual copy. See Whitman Photocopy Invoice Entries, annexed hereto as Exhibit 22; Bostik Photocopy Invoice Entries, annexed hereto as Exhibit 23. The daily lump-sum invoices do not provide the Court with sufficient information to determine whether the number and price per page of photocopies is reasonable. This is especially problematic in view of the excessive staffing discussed above, since it is likely that "a significant portion of the expense can be attributed to the fact that there were multiple participants on the defense team. Keeping everyone in the loop undoubtedly inflates the reproduction rate." InvesSys, 2003 U.S. Dist. LEXIS 12480 at *10.

Moreover, even if Black & Decker were able to establish a per-page charge for the photocopies, it could not prove that it is reasonable to pass the costs of such charges on to Liberty Mutual. Costs related to photocopying are an overhead item that should be considered an operational expense of the law firm. See Exhibit 5 at p. 13. The practical function of making a photocopy is similar to using a computer to type a memorandum or using a printer to print a document. These costs are not charged directly to a client, but instead are considered expenses which facilitate the firm's internal operations. Photocopying expenses, like other operational expenses, should already be incorporated into the hourly rates charged by the law firm. See id. Accordingly, it is not reasonable for the photocopying expenses to be presented

to Liberty Mutual for reimbursement.  The Whitman invoices should therefore be reduced by $301.60, and the Bostik Middleton invoices should be reduced by $3,547.48.

### 9.    <u>Fax/Telecopier Charges, Local Telephone Charges</u>

Black & Decker cannot prove that its costs associated with fax/telecopier charges and local telephone charges are reasonable.  For the same reasons as discussed above concerning  photocopy costs, Black & Decker should not be able to recover for either expense because there is no foundation for determining the reasonableness of such costs.  The invoices relating to faxing charges fail to disclose the method of calculating these charges.  <u>See</u> Whitman Fax/Telecopier Invoice Entries, annexed hereto as Exhibit 24; Bostik Fax/Telecopier Invoice Entries, annexed hereto as Exhibit 25 (showing daily totals for facsimile expenses as opposed to cost per page breakdown).  Similarly, the invoices relating to telephone charges provide no information as to whom the call(s) were made, nor the number of call(s) made.  <u>See</u> Whitman Telephone Invoice Entries, annexed hereto as Exhibit 26; Bostik Telephone Invoice Entries, annexed hereto as Exhibit 27 (showing description as "Telephone Charges for the Month of November, 1993").  Ultimately, there is no rational way to determine how the law firm arrived at such expenses.

Moreover, operational expenses such as faxing and placing phone calls are expenses that should already be incorporated into the firm's hourly rates, which take into account the firm's overhead costs.  <u>See</u> Exhibit 5 at pp. 16-17.   Black & Decker would have already paid for such overhead expenses when it paid for the reasonable legal services rendered.  Recovery of costs related to these fax/telecopier

and telephone expenses would therefore be unreasonable, because they are duplicative of the overhead costs already reflected by the hourly billing rates. <u>See</u>, <u>e.g.</u>, <u>Domestic Loan</u>, 1999 Mass. Super. LEXIS 568 at *8 ("[T]he court finds that the costs attributed to telephone/telecopier and word processing should be included in overhead costs and therefore are deducted in their entirety."). Accordingly, the Whitman invoices should be reduced by $569.16, and the Bostik Middleton invoices should be reduced by $447.75.[6]

### 10.    Overtime/Word Processing Charges

Black & Decker cannot prove that its costs associated with overtime support and word processing charges are reasonable. <u>See</u> Whitman Overtime/Word Processing Invoice Entries, annexed hereto as Exhibit 28; Bostik Overtime/Word Processing Invoice Entries, annexed hereto as Exhibit 29. Secretarial support and word processing are clearly administrative expenses. <u>See</u> <u>generally</u> <u>Lipsett</u>, 975 F.2d at 940. As discussed above, administrative services should be factored into the firm's overhead and reflected in the attorneys' billing rates, rather than being the subject of separate charges by the firm. <u>See</u> <u>generally</u> Exhibit 5 at p. 13 (administrative costs should be incorporated into the hourly rates that the firm charges). <u>See</u>, <u>e.g.</u>, <u>Domestic Loan</u>, 1999 Mass. Super. LEXIS 568 at *8 ("[T]he court finds that the costs attributed to . . . word processing should be included in overhead costs and therefore are deducted in their entirety."). Accordingly, the

---

[6] The reduction in costs related to the Bostik Site is based on a $30.36 reduction for telephone charges and a $417.39 reduction for faxing charges. <u>See</u> Exhibits 25 and 27. Similarly, the reduction in costs related to the Whitman Site is based on a $17.32 reduction for telephone charges and a $541.84 reduction for faxing charges. <u>See</u> Exhibits 24 and 26.

reimbursement sought by Black & Decker should be reduced by $205.50 for the Whitman site and $374.81 for the Bostik Middleton site.

### 11.   Computerized Legal Research

Black & Decker cannot prove that the costs charged by Swidler & Berlin for computerized legal research are reasonable.  See Whitman Computerized Legal Research Invoice Entries, annexed hereto as Exhibit 30; Bostik Computerized Legal Research Invoice Entries, annexed hereto as Exhibit 31.  Computerized research charges are analogous to charges for obtaining, maintaining and updating a hard copy law library because they serve the same purpose.  See Exhibit 3 at p. 16. Expenses associated with the possession and maintenance of a hard copy library are considered part of the firm's overhead.  See id. at p. 17.  Similar to the maintenance of an updated library, a law firm's conscious decision to utilize computerized legal research should be considered a maintenance expense, which facilitates the firm's internal operations.  Maintenance expenses, like other operational expenses, should be incorporated into the hourly rates charged by the law firm.  See id.  Accordingly, it is not reasonable for computerized legal research to be presented to Liberty Mutual for reimbursement.  The Whitman invoices should therefore be reduced by $132.27 and the Bostik Middleton invoices should be reduced by $89.39.

### 12.   Postage Charges, Messenger/Courier/Delivery Charges, And Express/Overnight Mail Charges

Black & Decker cannot prove that its costs associated with postage, courier charges and overnight delivery charges are reasonable.  Black & Decker seeks reimbursement for costs such as "postage charges for the month of September",

"Federal Express", and "Courier Charge".  <u>See</u> Whitman Postage Invoice Entries, annexed hereto as Exhibit 32; Bostik Postage Invoice Entries, annexed hereto as Exhibit 33; Whitman Messenger/Courier/Delivery Invoice Entries, annexed hereto as Exhibit 34; Bostik Messenger/Courier/Delivery Invoice Entries, annexed hereto as Exhibit 35; Whitman Express/Overnight Mail Invoice Entries, annexed hereto as Exhibit 36; Bostik Express/Overnight Mail Invoice Entries, annexed hereto as Exhibit 37.  Sending pleadings, letters or materials is an everyday function of a law firm.  Whether the firm utilizes messengers, first class mail, overnight delivery, faxes, or e-mails, the law firm's choice for delivery of a document is an operational expense, which should already be incorporated into a firm's hourly rates that it charges its clients.  <u>See</u> Exhibit 5 at pp. 17-18 (use of these delivery methods on a routine basis is the cost of doing business for the firm and should not be passed on to the client).  Black & Decker would have already paid for such expenses when it paid for the reasonable legal services rendered.  <u>See</u> <u>generally</u> <u>Domestic Loan</u>, 1999 Mass. Super. LEXIS 568 at *8.  Accordingly, the Whitman invoices should be reduced by $208.66 and the Bostik Middleton invoices should be reduced by $244.52.[7]

     13.    <u>**Airfare/Rail/Rental Car Charges, Local Travel/Transportation Charges, Unspecified Travel/Transportation Charges, And Meals**</u>

---

[7] The reduction in costs related to the Bostik Site is based on a $43.74 reduction for postage charges, a $23.26 reduction for messenger charges and a $177.52 reduction for overnight delivery charges.  <u>See</u> Exhibits 33, 35, and 37.  Similarly, the reduction in costs related to the Whitman Site is based on a $9.26 reduction for postage charges, a $10.20 reduction for messenger charges and a $189.20 reduction for overnight delivery charges.  <u>See</u> Exhibits 32, 34, and 36.

Black & Decker cannot prove that its costs for transportation and meals are related to defense of the underlying cases and reasonable in amount. Black & Decker seeks reimbursement for parking, rental cars, airfare, and meals, without any explanation or documentation. See Whitman Local Travel/Transportation Invoice Entries, annexed hereto as Exhibit 38; Bostik Local Travel/Transportation Invoice Entries, annexed hereto as Exhibit 39; Whitman Unspecified Travel/Transportation Invoice Entries, annexed hereto as Exhibit 40; Bostik Unspecified Travel/Transportation Invoice Entries, annexed hereto as Exhibit 41; Bostik Airfare/Rail/Rental Car Invoice Entries, annexed hereto as Exhibit 42; Whitman Meals Invoice Entries, annexed hereto as Exhibit 43. For example, the Swidler & Berlin invoices related to these travel expenses list charges for "travel to Boston, MA on 3/15/94", "Ground Transportation DC Dial A Car", and "car rental", "meal charges". Id. Such a lack of specificity in these invoice entries is insufficient to permit a determination of whether the activity was necessary for the defense of the underlying claim. Therefore, Black & Decker cannot meet its burden of proving that such fees were reasonable, because the invoices provide no "decisional foundation" for such a determination. See generally InvesSys, 2003 U.S. Dist. LEXIS at *9 ("What is included in this category is not explained by the defendants. In the absence of justification, I disallow it in its entirety").

Black & Decker also seeks reimbursement for what appears to be local travel. The Swidler & Berlin invoices list charges for "parking stickers", mileage/gasoline" and "travel/parking." See Exhibits 38 and 39. Reimbursement for such invoice

entries is not warranted, both because the descriptions are vague, and because local travel costs, such as commuting to work, should not be reimbursable. An employee would have to absorb the cost of his commute to work regardless of whether or not he was working on a matter related to the underlying charge. If a law firm decides to reimburse its employees for such costs by paying for these expenses, such reimbursement should be considered a routine part of any firm's operations and therefore an element of the firm's overhead expense. See Exhibit 3 at pp. 39-40. A law firm's decision to reimburse its employees for use of their personal vehicles, parking and toll charges should not be passed on as an expense to the client. See id. at p. 40. Such costs should already be incorporated into the hourly rates that the firm charges its clients; therefore, Black & Decker would have already paid for such expenses when it paid for the reasonable legal services rendered. Accordingly, the Whitman invoices should be reduced by $132.92, and the Bostik Middleton invoices should be reduced by $1,283.46.[8]

### 14. **Questionable Expenses**

Black & Decker cannot prove that several questionable entries for expenses are reasonable. Black & Decker seeks reimbursement for disbursements described merely as "documents", "meeting expenses" and "costs advanced". See Whitman Questionable Expenses Invoice Entries, annexed hereto as Exhibit 44; Bostik Questionable Expenses Invoice Entries, annexed hereto as Exhibit 45. These

---

[8] The reduction in costs related to the Bostik Site is based on a $122.20 reduction for unspecified travel charges, a $1,076.06 reduction for airfare/rail and rental car charges, and a $53.20 reduction for local travel expenses. See Exhibits 39, 41, and 42. Similarly, the reduction in costs related to the Whitman Site is based on a $29.20 reduction for unspecified travel charges, a $24.00 reduction for local travel expenses and a $79.72 reduction for meals. See Exhibits 38, 40, and 43.

descriptions do not indicate what documents, meetings, or costs were involved, or the purpose for which the expenses were incurred.  The lack of specific information about these charges precludes an assessment of whether they are reasonable, and therefore renders them non-reimbursable.  See generally InvesSys, 2003 U. S. Dist. LEXIS at *9 ("What is included in this category is not explained by the defendants. In the absence of justification, I disallow it in its entirety.").  Accordingly, the fees associated with these vague invoice entries should be deducted in their entirety from the Whitman and Bostik Middleton invoices, in the amount of $13.40 and $360.38, respectively.

The foregoing recommended reductions in the fees charged for legal services and disbursements are set forth on the spreadsheets annexed hereto as Exhibits 46 through 48 (Whitman Legal Services, Disbursements, and Summary Combining Legal Services and Disbursements), and Exhibits 49 through 51 (Bostik Legal Services, Disbursements, and Summary Combining Legal Services and Disbursements).  The total amount of the recommended reductions is $30,748.01 for the Whitman site, and $26,763.79 for the Bostik Middleton site.

## III.    BLACK & DECKER'S PREJUDGMENT INTEREST CALCULATION METHODOLOGY IS INCORRECT.

In its schedules of the invoices for which it seeks reimbursement, Black & Decker has included a column which purports to show the total amount of prejudgment interest due with respect to each such invoice.  Black & Decker notes that the prejudgment interest is calculated at the rate of twelve percent, and that the interest begins to accrue as of thirty days after the invoice date.

It is well-established, however, that prejudgment interest on defense costs which have been awarded as damages for the breach of the duty to defend under an insurance policy starts to run as of the date on which the subject defense costs were actually paid by the policyholder, not the invoice due date.  See Sterilite Corp. v. Continental Cas. Co., 397 Mass. 837, 840-42, 494 N.E.2d 1008 (1986) ("The dates of the payment of the various bills, which is readily ascertainable, determines the points at which [the policyholder] was obliged to commit sums which it rightfully should not have been obliged to commit . . . .  No interest is due on sums when [the policyholder] was not deprived of the use of those sums.") (emphasis added).  See also Interstate Brands Corp. v. Lilly Transportation Corp., 256 F. Supp.2d 58, 64 (D. Mass. 2003)("With regard to attorneys' fees, the law is clear that, if this were a case where fees are subject to interest, . . . interest should only be awarded from the date legal bills actually were paid.").  In insurance cases, prejudgment interest involving payment of defense costs is calculated "on the basis of the various dates on which the legal bills were paid by [the policyholder]."  Sterilite, 397 Mass. at 842. The interest calculation depends on the date of payment of the invoice because "[b]efore those bills were paid, [the policyholder] was not deprived of the use of its money.  No interest is due on sums when [the policyholder] was not deprived of the use of its money."  Id.

In the instant case, Black & Decker has not presented any evidence that the Swidler & Berlin invoices were paid on specific dates (or were even paid at all). Accordingly, Black & Decker has not satisfied the proof requirement under Sterilite

for entitlement to prejudgment interest on defense costs.  Under the facts of this case, however, even if Black & Decker did present evidence of the payment date of an invoice, it still would not be entitled to have interest commence until the date, after the claim notice date of November 3, 1994, on which Black & Decker presented the invoice to Liberty Mutual for reimbursement and, after a reasonable review period, Liberty Mutual declined to pay.  Until Black & Decker notified Liberty Mutual of the existence of the Whitman and Bostik Middleton claims on November 3, 1994, and thereafter presented invoices to Liberty Mutual for payment, Black & Decker had not been deprived of the use of its money, because no one other than Black & Decker had been put on notice of a potential obligation to pay the invoices. Thus, under <u>Sterilite,</u> Black & Decker cannot be entitled to interest until the date on which it presented Liberty Mutual with either an already-paid or an unpaid invoice, Liberty Mutual declined to pay the invoice after a reasonable period of review, and Black & Decker thereby was deprived of the use of its money, because another entity with a potential obligation to pay the invoice declined to do so.

The invoice schedules presented by Black & Decker (Exhibits 1 and 2 hereto) do not show the dates (if any) on which Black & Decker paid Swidler & Berlin's invoices, or the dates (if any) on which Liberty Mutual, after a reasonable period of review, declined to reimburse Black & Decker for the invoices which had been presented to Liberty Mutual for reimbursement.  Unless and until it is able to present evidence of the dates on which it became wrongfully deprived of the use of its funds by virtue of having to pay an invoice that Liberty Mutual had declined

(after tender of the invoice and a reasonable review period) to pay, Black & Decker cannot be entitled to an award of prejudgment interest with respect to post-tender defense costs at the Whitman and Bostik Middleton sites.

## Conclusion

For the foregoing reasons, Black & Decker is not entitled to an award of pre-notice defense costs at the Whitman site, prejudgment interest on post-tender defense costs at the Whitman and Bostik Middleton sites, or the full amount of the post-tender defense costs shown on the Swidler & Berlin invoices which Black & Decker has presented for reimbursement.  Instead, Liberty Mutual is entitled to entry of an order declaring that it need only reimburse Black & Decker for those defense costs incurred after November 3, 1994, minus the deductions recommended in the expert reports of Charity Connor.

Respectfully submitted,

LIBERTY MUTUAL INSURANCE COMPANY

By its attorneys,
        /s/ Ralph T. Lepore, III
Ralph T. Lepore, III (BBO #294420)
Janice Kelley Rowan (BBO #265520)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA  02116
(617) 523-2700

Dated:  June 3, 2004

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of June, 2004, I caused a copy of the

foregoing document to be served by hand upon Jack R. Pirozzolo, Esq., counsel to

Black & Decker, at Willcox, Pirozzolo & McCarthy, P.C., 50 Federal Street, Boston,

Massachusetts 02110.

   /s/ Janice Kelley Rowan
Janice Kelley Rowan
