8.   <u>Motion Practice:</u>

Legalgard has attempted to determine whether the firms' charges related to
motion practice are reasonable in light of the length, novelty and complexity
of motions drafted. Without a review of the file, Legalgard cannot make a
final determination regarding the accuracy and propriety of the charges
related to motion practice. Legalgard can, however, identify potential areas
of concern relating to motion practice, such as duplication of effort and
excessive time charges.

As shown in **Charts M5** and **D5**, the Miles and Day firms spent a significant
amount of time on motion practice - including motion to dismiss and motion
for summary judgment. Our primary areas of concern regarding these firms'
motion practice are the number of timekeepers working on each motion and
the amount of time billed.

- **Day**

  Although, again, this firm's billing method made it impossible to
  evaluate motion practice, it is obvious that considerable time
  was included in the invoices for the preparation and filing of
  numerous and varied motions - where many timekeepers would
  bill for drafting, reviewing, revising the same motion papers. See
  **Chart D5.** We also note that there were numerous entries related
  to the preparation of various motions for extension of time (to
  respond to interrogatories, for example) - raising the issue of
  why extensions of time were so often requested and whether
  the client should properly bear the cost of such motions. In
  addition, these time charges noted do not include other
  substantial time billed for legal research related to those motions,
  or other time spent organizing documents and exhibits.

- **Miles**

  It appears that three timekeepers worked on a motion to dismiss
  (see **Chart M5**). Legalgard found that SAH spent approximately
  22 hours drafting and revising a motion to dismiss and MCH and
  TEL spent 9.6 hours reviewing and revising the motion. With
  respect to the opposition to the motion, all three timekeepers
  again participated in the preparation of the reply brief. Thus,

28

over 43 hours are listed in **Chart M5** in connection with the preparation of the motion to dismiss and reply brief - at a cost of almost $6,000. This does not include the hours billed for legal research apparently related to this motion.

It is Legalgard's position that revisions by one timekeeper of another's work are not typically billable because they are the result of a supervisory or educational practice. The timekeeper originally given the assignment to draft or respond to a motion should be competent to draft the brief with minimal redrafting or supervision. Legalgard recognizes that the preparation of these briefs was very important in that the motions may have set the stage for the litigation, served as an opportunity to organize the firm's strategy and apprise the court of the defenses. Thus, careful preparation was expected.

What was not expected was the participation of 3, 4 and 5 timekeepers in the preparation of the motion papers and charges for duplicative and excessive time. This practice may be the result of the abuse of the team approach. If so, the costs related to this practice should be borne by the firm, not the client.

**Recommendation:**

As shown in **Charts D5 and M5**, the firms spent a considerable time drafting and revising motions. Without a review of the file, Legalgard cannot determine whether the time charges related to motion practice were inaccurate and/or clearly improper. Legalgard has, however, determined that motions were prepared by a team that repeatedly reviewed and revised the original draft of the motion. It appears that the motion practice contained an educational aspect for which the client should not be responsible. As such, Liberty Mutual should consider a partial reduction due to the inefficiencies of fifty percent (50%).

9.    <u>Legal Research</u>

Legalgard attempted to evaluate whether the legal research charges were reasonable. Without a review of the file and a discussion about the matter with the firm, Legalgard cannot definitively determine whether certain legal research charges are reasonable. Legalgard can, however, identify potential areas of concern relative to the legal research performed. For example, we

29

can evaluate whether the research appears elementary, the professional levels or hourly rates of those performing the research, and whether the time charges related to legal research seem excessive.

Legalgard defines elementary research as research into topics which should be in the general knowledge of attorneys holding themselves out as experienced in a particular area of law. For example, experienced litigators should not be researching local rules.

Legalgard found numerous examples of elementary or arguably routine research in each of the firms' invoices. For example: Miles, on 1/03/95 MCH billed .6 hours for "research local rules"; Porzio, on 6/3/94 JRM billed .4 hours for "Review Local Court Rules."; Swidler, (invoice 12/22/94), on 11/7/94 DR billed .5 hours for "Review Local Rules". Included in **Charts D6, SB7, M6** and **P5** Legalgard determined that the firms billed numerous hours to perform what appeared to be elementary legal research as well as vague, questionable and repetitive research.

Most of the legal research was so vaguely described that it was impossible to determine the nature of the research. Without an explanation of the legal research performed, Legalgard cannot determine the appropriateness thereof. In the Day invoices, for example, there are numerous entries for "legal research" with no explanation whatsoever.

Other examples of vagueness include:

- Swidler – 9/8/94 (BROS), JAN charged 2.0 hours for "Westlaw Research";
- Miles - 11/2/94, MCH charged 1.7 hours for "Legal Research";
- Porzio - 6/12/94, JRM charged 1.10 hours for "Research Law re: CERCLA";
- Siegel - 7/6/89, LJD charged .50 hours for "Research re: Superfund".

In addition, Legalgard identified several topics or issues for which there were repeated entries for research, such as "CERCLA" or "Superfund". Furthermore, there was substantial time billed for legal research by partners and senior partners at several firms. For example, Swidler, (Jaffrey Tack Pile invoice), BLM, 7/9/97, "Reviewing New Hampshire Statutes and Regulations", 2.25 hours and 7/10/97, same entry at 4.0 hours at $290.00/hour. It is Legalgard's position that senior attorneys billing at

30

$290.00/hour rarely, if ever, need to expend significant time on legal research.  This is especially pertinent to this firm since there were at least two other attorneys at the firm researching and drafting memoranda regarding New Hampshire law.  See Chart SB7.

Based upon the vagueness of description, the excessive amount of research time and the repetitive and overlapping research entries by certain timekeepers, we recommend that these charges be compromised.  Recommendation:

Legalgard has identified legal research, including what appears to be elementary, questionable and vague legal research in Charts D6, SB7, M6 and P5.  Legalgard recommends that those amounts be reduced from the invoices.  Liberty Mutual may also consider further review and verification of these charges through an on-site audit.  In order to minimize research costs, Legalgard recommends the following questions:

> What was the exact nature of the issue to be researched?

> Why was the research necessary?

> Has the firm researched this issue previously?  If so, are the fruits of the research available?  If not, why not?

> Who performed the research?  Could the research have been performed competently and efficiently by an individual with a lower hourly rate?

> How long did the research take?

With better management of, and a higher level of accountability for, legal research, law firms' charges for research are typically reduced.


10.    Misutilization of Personnel:

    A.    Professionals Performing Secretarial/Administrative Functions:

    The attorneys and paralegals in some of the firms are performing what appear to be secretarial or clerical functions and billing for performance

31

of these functions at their professional rates. Legalgard considers the cost for performing clerical functions to be a cost of doing business and not properly chargeable to a client. These activities should be factored into the firms' hourly rates. Clerical activities billed by these firms included maintaining a calendar, filing, copying documents, faxing documents, arranging for couriers and arranging to copy.

Additionally, due to vague descriptions, Legalgard identified entries with respect to which Legalgard could not determine the nature of the work performed. As described, however, these entries appeared clerical. These "Questionable Secretarial/Clerical" charges are compiled in **Charts D8, SB9, M8, P7 and S6.**

- **Day**

    Although hindered by the vague descriptions as well as the apparent omission of activities from the billing descriptions, Legalgard determined that this firm is billing for clerical tasks such as maintaining a calendar, forwarding copies and filing.

- **Swidler**

    The firm billed for clerical tasks such as transmittal of documents, obtaining transcripts, copying documents, updating files, copying and updating indices.

- **Miles**

    The firm billed frequently for clerical tasks. For example: 10/8/94 invoice, 9/9/94 entry, MCH, "Mailed pleadings."; 11/9/94 invoice, 10/5/94 entry, TEL, "Federal Express Affidavit."

- **Siegel**

    The firm billed for performance of clerical tasks, such as forwarding documents, obtaining copies and filing.

32

- **Porzio**

  The firm frequently billed for performance of clerical tasks such as updating files and indices, maintaining a calendar and updating counsel lists.

Legalgard has illustrated in **Charts D7, SB8, M7, S5 and P6** those entries which appear to be secretarial or clerical and require no professional expertise.   As such, these activities can be performed by a competent secretary at no cost to Liberty Mutual and are considered firm overhead.

**Recommendation:**

Legalgard recommends that the amounts charged related to professionals performing clerical tasks, including questionable charges, as shown in both sets of charts be reduced from the billings.

B.    <u>Paralegal Functions Charged at Attorney Rates</u>:

Legalgard found that the attorneys at several firms were frequently billing for performance of functions which could have been performed by competent paralegals at significant cost savings.  Examples of the types of functions which can be performed by paralegals rather than attorneys include: cite checking briefs, drafting page/line deposition digests, summarizing medical records and attempting to initially contact potential witnesses.  See **Charts D9, SB10, M9 and S7**.

- **Day**

  Due to the lack of timekeeper identification, it is impossible to determine whether the firm is appropriately utilizing paralegals. However, Legalgard notes the presence of numerous paralegal-level tasks in the invoices, such as digesting depositions, conducting title searches and summarizing interrogatories.

- **Swidler**

  The firm also billed for attorneys performing paralegal tasks such as review of shipment ledgers, searching an S&P database,

33

digesting depositions, checking corporate background and contacting witnesses.

- **Miles**

  The firm also appeared to bill for attorneys performing paralegal tasks, such as cite checking.  For example, 11/7/94, SAH, "Cite Check Reply Brief", .4 hours.

**Recommendation:**

failure of a firm to properly utilize paralegals results in attorneys performing paralegal tasks at additional cost to the client.  Legalgard recommends that the cost differential between those entries charged at the attorney rates and the hourly rate at which the firm bills paralegals be reduced from the firms' invoices.

11.  Uncovered Work:

Liberty Mutual requested Legalgard to review the invoices to identify areas of legal work which appeared to be non-defense-related and to compile a list of those billing entries. Although we were somewhat hindered in this review by the vagueness of billing descriptions, Legalgard was able to delineate certain categories and the corresponding charges where the items were arguably not the responsibility of Liberty Mutual.  These areas included legal work related to audit letters (responding to accountants' requests), insurance coverage and corporate business matters for the insured.  See **Charts D11, SB12, M11, S9 and P9.**

- **Day**

  The firm appears to have billed substantial time for both "preparation of audit response letters" and insurance claims and coverage issues.  See, especially, invoice date 6/25/96 (Farrell Corporation), entry "Conference regarding Liberty Mutual Coverage Lawsuit" and related entries in **Chart D11.**

34

- **Swidler**

    This firm appeared to bill for both audit letters (see <u>Texon</u> invoice, entry 1/20/95, BPB, "Draft Audit Letter Responses"), and insurance-related issues, as well as corporate purchase and sale and indemnification agreements (see **Chart SB12**) at a cost of over $21,000.00.  The large majority of time billed related to insurance matters such as notice letters to insurers and responding to carriers' requests for information.  In fact, as reflected in **Chart SB12**, during the period 3/6 - 3/29/97 a senior partner (BLM, $290/hour) and two other partners (JMK, $225; WAF, $250) charged approximately 33 hours at a cost of $9,000.00 reviewing for and preparing a response to the information request of Integrity Insurance Company.

- **Miles**

    **Chart M11** reflects that this firm also billed for work involving audit letters and dealing with insurance carriers' issues and responses.

- **Siegel**

    **Chart S9** reflects that this firm also billed for work preparing audit letter responses and dealing with insurance carriers' issues and responses.

- **Porzio**

    Legalgard's in depth analysis determined that this firm appeared to charge for work relating to insurance coverage issues.  See **Chart P9**.

**Recommendation:**

Legalgard recommends that the amounts set forth in each of the charts be deducted from the invoices as items not properly chargeable against Liberty Mutual.  In the alternative, further review, evaluation and/or verification of the appropriateness of these billing entries should be considered by way of an on-site audit or a request for documentation.

35

12.   <u>Questionable/Exceptional Charges</u>:

Legalgard has previously identified and discussed numerous areas of concern with these legal invoices, including:

- improper billing formats and deficiencies
- vague descriptions in billing entries
- grouping of functions
- overstaffing/abuse of the team approach
- inappropriate utilization of professional staff and personnel.

In the extensive review of these invoices, Legalgard saw countless examples of questionable billing practices, exceptional charges and excessive time entries. In this section Legalgard has selected a sampling of the many areas of questionable billing entries and/or excessive time charges. The charts discussed below are illustrative of many of the problem categories discussed throughout this report.

- **Chart SB10** indicates that a partner (AC) at the Siegel firm (at an hourly rate of $200.00) billed at least 32 hours in ten entries at a cost of $6,400.00 for the preparation of an Allocation Questionnaire Response. While Legalgard recognizes that this is an important document, it is highly suspect and perhaps without justification that an associate attorney (another member of the Siegel team) did not perform the majority of the preparation work for this document - with a more senior attorney approving the final draft - at a substantial savings of cost.

- In **Chart SB13**, a senior partner at Swidler (BLM) billed at least 21.75 hours at a cost of $6,095.00 for time charges related to the preparation of a "strategy" letter to the client.

- **Chart P10** reflects that Porzio attorney JRM (at $150/hour) and partner RJB (at $260/hour) charged a minimum of 19.30 hours stretched over a number of weeks to "Prepare Answers to Interrogatories" and responses to routine document requests.

- Attorney JRM at Porzio also billed at least 17.60 hours in connection with correspondence to the client regarding

36

"settlement options", at a cost of $2,650.00, shown in **Chart P10**.

- Similarly, attorney NDG at Swidler spent 62 hours over approximately one month in the review and analysis of documents and drafting of a "decision memo" on the "Bros settlement process" at a cost of $9,600.00 (**Chart SB10**).

While Legalgard recognizes the significance of the functions performed in the charts discussed above, the charts are suggestive of inefficient work, inappropriate level of timekeepers and excessive time charges.

The deficiencies may be further complicated by a lack of detail in billing descriptions, rounding of time charges and/or overstaffing of cases, but the circumstance remains that the charges appear to be excessive and the cost too high.

There are numerous other areas of work or functions which appeared to require an inordinate amount of time to accomplish with correspondingly high cost to the client - subject to substantial reductions in order to be reasonably reimbursed. The cost of the functions billed in **Charts SB12, S10, and P10** for example, arguably should be reduced by as much as fifty percent (50%) as a more realistic compensation for the work involved.

37

# DISBURSEMENTS

### 1.    Photocopy:

Legalgard determined that there were substantial charges for photocopies. The invoices did <u>not</u> disclose the number of copies made, or the cost per page  or the documents being copied.  It is Legalgard's position that costs related to photocopying are an overhead item and should be considered an operational expense of the law firm.  Photocopying is a typical business expenditure and should be appropriately budgeted for in the hourly rate. Thus, it is Legalgard's recommendation that there be no reimbursement for photocopying expenses with the exception of extraordinary photocopying, which should be sent out for bulk copy and charged at the national bulk photocopy rate which ranges between $.03 and $.12 per page.

**Recommendation:**

Legalgard recommends that the **$21,034.79** charged for photocopy expense be deducted or, alternatively, be reimbursed at actual cost not to exceed the regional bulk copy rate of between $.03 and $.12 per copy.

### 2.    Telecopier/Facsimile:

Legalgard determined that the firms billed **$3,945.88** for telecopy charges. The method of determining these charges (e.g., flat rate per page, outgoing telephone charges, etc.) is not specified.  Regardless, it is Legalgard's opinion that facsimile charges are a typical operating expense for any business, including law firms.  As a result, these charges should not be reimbursed.  Alternatively, should Liberty Mutual consider fax reimbursement to be appropriate, on-line telephone provider statements should be provided with the billings and only actual line charges to send <u>outgoing</u> transmissions be reimbursed.

**Recommendation:**

Legalgard recommends that the **$3,945.88** charged for facsimile expense be deducted.  Alternatively, on-line statements should be provided to determine reimbursement at cost.

3.    <u>Telephone Charges</u>:

Legalgard notes that the firms billed **$1,452.63** in "telephone" charges with no itemization of whether the charges were for long distance or local telephone service.  Legalgard believes that long distance telephone charges are appropriate disbursements.  Conversely, we believe that local telephone charges are part of a firm's overhead and are not properly reimbursable.

There does not appear to be documentation to support these charges.  Such documentation would include the telephone number called, and the length of the call.  (The latter item allows for verification of professional time charges corresponding to the telephone call.)

**Recommendation:**

Legalgard recommends that these charges be reduced from the billing absent further documentation to support these charges.

4.    <u>Messenger/Courier/Overnight Delivery</u>:

The firms charged a total of **$547.37** for messenger services and express mail.  It is Legalgard's opinion that the use of messenger services and express mail on a routine basis is a cost of doing business for the firms, and should not be passed along to the client.  In those extraordinary situations in which a client requests the use of such expedited delivery service or where such services are required by circumstances beyond the control of the law firm, reimbursement may be considered.

**Recommendation:**

Legalgard recommends that **$547.37** be deducted for costs associated with messenger service and express mail, absent evidence of extraordinary situations as described above.

5.    <u>Local Travel Expense</u>:

Legalgard considers local travel (i.e., travel of 100 miles or less) to be a routine part of any law firm's operations, and therefore an element of the

39

firm's overhead expense. While it may be entirely appropriate for the law firm to reimburse its employees for local travel expenses associated with the use of their personal vehicles, parking and toll charges, these types of expenses should not be passed on to the client.

**Recommendation:**

Legalgard recommends that payment of **$1,012.96** in local travel expense be withheld, or alternatively, that the firms be required to submit additional documentation.

6.     <u>Computerized Legal Research</u>:

This firms charged **$5,655.83** for computerized legal research (Lexis, Westlaw). It is Legalgard's position that computerized legal research expenses are not a reimbursable disbursement. Computerized research charges are analogous to charges for obtaining, maintaining and updating a hard copy law library. Since the expenses associated with the possession and maintenance of a hard copy library are considered part of the firm's overhead, the expenses of a computerized system should also be borne by the law firm.

Presumably, the use of these services increases a firm's efficiency and economy. The client should not be expected to pay for these efficiencies but, should rather, receive the benefits in terms of fewer dollars spent to prepare the defense of the case.

**Recommendation:**

Legalgard recommends a complete reduction of **$5,655.83** for these charges. In the alternative, a reimbursement decision may be considered upon receipt of back-up documentation indicating that no mark-up was included and/or that on-line time was utilized strictly for research and not for reading or printing materials better reviewed off-line.

7.     <u>Postage</u>

Legalgard considers routine postage to be part of any law firm's overhead, and therefore not properly reimbursable ~~by the client.~~ Extraordinary postage expenses

40

firm's overhead expense. While it may be entirely appropriate for the law firm to reimburse its employees for local travel expenses associated with the use of their personal vehicles, parking and toll charges, these types of expenses should not be passed on to the client.

**Recommendation:**

Legalgard recommends that payment of **$1,012.96** in local travel expense be withheld, or alternatively, that the firms be required to submit additional documentation.

6.    Computerized Legal Research:

This firms charged **$5,655.83** for computerized legal research (Lexis, Westlaw). It is Legalgard's position that computerized legal research expenses are not a reimbursable disbursement. Computerized research charges are analogous to charges for obtaining, maintaining and updating a hard copy law library. Since the expenses associated with the possession and maintenance of a hard copy library are considered part of the firm's overhead, the expenses of a computerized system should also be borne by the law firm.

Presumably, the use of these services increases a firm's efficiency and economy. The client should not be expected to pay for these efficiencies but, should rather, receive the benefits in terms of fewer dollars spent to prepare the defense of the case.

**Recommendation:**

Legalgard recommends a complete reduction of **$5,655.83** for these charges. In the alternative, a reimbursement decision may be considered upon receipt of back-up documentation indicating that no mark-up was included and/or that on-line time was utilized strictly for research and not for reading or printing materials better reviewed off-line.

7.    Postage

Legalgard considers routine postage to be part of any law firm's overhead, and

40

therefore not properly reimbursable by the client. Extraordinary postage expenses may be properly reimbursable under certain circumstances. For example, if a firm is required to send a notice to many parties (as in a class action), or if an unusually large volume of documents (such as in connection with a document production) must be mailed, extraordinary postage expenses may be properly reimbursable. Those circumstances are not reflected in these bills.

**Recommendation:**

Legalgard recommends that the **$758.12** charged for postage expense be deducted from the bills.

8.    Grouped Expenses

Each expense should be itemized by line, with each line containing a specific description of the single itemized expense incurred. The practice of grouping expenses together under a single charge precludes efficient review of each expense incurred. All of these charges would be considered unacceptable and as such not subject to be reimbursed. In these invoices, the Day firm charged over $140,000.00 in grouped expenses-where photocopying, telephone, telecopier, delivery charges, etc., were lumped together under a single amount.

Our recommendation is to deduct these charges from the bills.

9.    Miscellaneous Expenses

Expense amounts must be itemized and explained in the bill. Miscellaneous expense items fail to satisfy acceptable billing standards, and should not be paid. In these invoices, for example, Swidler charged $1,955.99 for "Miscellaneous Charges." Legalgard recommends that the total billed for miscellaneous expenses of **$3,231.62** be deducted from the bills.

10.    Questionable Expenses

Expense amounts must be justified and explained in the bill. A simple

41

statement, for example, "Professional Services", does not indicate what services were rendered, by whom or for what purpose. Questionable expense items may be substantiated by the firms; but in the absence of such justification, such charges should not be reimbursed.

Questionable expense charges amount to **$4,348.14** and should be removed from the bills unless documentation and itemization is provided.


11.   Unspecified Travel

In order to keep a client properly informed of the nature, basis, or reasonableness of activities and the billing for same, all work, including travel, must be specifically described as to the date and purpose of the travel, distance of the travel, who traveled, etc. Without such description, these expenses should not be paid. Unspecified travel charges in these invoices account for a total of **$4,945.55** and should not be reimbursed absent itemization and supporting documentation.


We have attached a summary of the above charges and all other coded disbursements/expenses as **Exhibit F**. These charges are set forth in detail in **Charts D10, SB11, M10, S8 and P8**. It is Legalgard's position that none of the expense charges listed are appropriate for reimbursement, if at all, without additional supporting documentation.